DAVIS AND DAVIS REALTY CO., INC., PLAINTIFF v. JEROME T. RODGERS,
AND J. T. RODGERS CORP., A CORPORATION, JOINTLY AND SEVERALLY,
DEFENDANT

No. 8926SC310

(Filed 21 November 1989)

**Brokers and Factors § 6.1 (NCI3d) — realtor — commission — earned
on signing of contract**

The trial court correctly denied defendants' motions for
directed verdict or judgment n.o.v. in an action to collect a
real estate commission where plaintiff realtor had negotiated
on behalf of defendants for several months for the purchase
of a 196-acre tract of land in Mecklenburg County; a purchase
price of $8,000 per acre was offered with a commission of
7% of the sale price to be paid by the sellers; plaintiff and
defendants subsequently agreed on a purchase price of $7,100
per acre with a commission of $50,000 to be paid by the pur-
chaser; plaintiff succeeded in getting all of the owners to sign
a sales contract; defendant executed the contract and paid
an earnest money deposit to plaintiff as escrow agent; the
contract provided a 30-day period in which to inspect the prop-
erty and terminate the contract; defendant did not terminate
the contract within that period; and defendant elected not

---

to purchase the property. Any inconsistencies in plaintiff's evidence with regard to when the commission was actually due and payable was for resolution by the jury, and there was evidence supporting the jury's verdict that the commission was earned when the property owners agreed to sell the property to defendant and that plaintiff was under no duty to see the sale through to completion.

**Am Jur 2d, Brokers §§ 183, 196, 204.**

APPEAL by defendants from *Allen, C. Walter, Judge.* Judgment entered 3 November 1988 in MECKLENBURG County Superior Court. Heard in the Court of Appeals 12 October 1989.

Defendant, Jerome T. Rodgers, is actively engaged in the business of real estate development and investment in Charlotte, North Carolina. Defendant, J. T. Rodgers Corporation, is wholly owned by Jerome T. Rodgers and is in the business of real estate management and development.

Plaintiff, Davis and Davis Realty Company, Inc., buys, sells, and brokers transactions in real estate. W. Cleve Davis is the president of plaintiff corporation.

For several months during early 1986, plaintiff unsuccessfully negotiated on behalf of defendants for the purchase of a 196-acre tract of land (the Hall property) which was located in Mecklenburg County. During the original negotiations a purchase price of $8,000 per acre was offered and a commission of 7% of the sale price was to be paid to plaintiff by the sellers of the property (the Hall heirs). In September 1986 Jerome T. Rodgers and W. Cleve Davis again discussed the potential acquisition of the Hall property. The outcome of this discussion was that a reduced purchase price of $7,100 per acre was to be offered for the Hall property and a real estate commission of $50,000 would be paid to the plaintiff by the purchaser of the property.

In October 1986 plaintiff succeeded in getting the Hall heirs to sign a sales contract with the corporate defendant under the above specified terms, including the reduced purchase price of $7,100 per acre. Jerome T. Rodgers executed the contract as president of J. T. Rodgers Corp. An earnest money deposit was paid to plaintiff as escrow agent. The sales contract provided in part that J. T. Rodgers Corp. had a 30-day period in which to inspect the

DAVIS AND DAVIS REALTY CO. v. RODGERS

[96 N.C. App. 306 (1989)]

property and terminate the contract if it so desired. J. T. Rodgers Corp. did not terminate the contract within the 30-day period; however, it elected not to purchase the Hall property. The earnest money was forfeited and no commission was ever paid to the plaintiff. At trial plaintiff asserted that the commission was obtained upon the signing of the sales contract by the Hall heirs. Defendants asserted that the commission was not due unless the corporate defendant actually acquired the property. From a jury verdict in favor of plaintiff, defendants appealed.

*Bradley, Guthery, Turner and Curry, by Tate K. Sterrett, for plaintiff-appellee.*

*Murchison, Guthrie, Davis & Henderson, by Robert E. Henderson and K. Neal Davis, for defendant-appellants.*

WELLS, Judge.

Defendants contend that the trial court erred by refusing to grant their motions for directed verdict or judgment notwithstanding the verdict. Defendants contend that plaintiff's testimony concerning when his commission was due is so inconsistent as to establish as a matter of law that no agreement was ever reached by the parties. For the following reasons we disagree.

The jury found that: (1) a contract existed between plaintiff and either defendant whereby either defendant was to pay to the plaintiff a real estate commission on the Hall property and (2) the contract was breached by defendants' refusal to pay the commission. The parties stipulated at trial that the verdict would be binding on both defendants, jointly and severally.

When determining whether to grant a motion for directed verdict or judgment notwithstanding the verdict the same standard applies. *Williams v. Jones*, 322 N.C. 42, 366 S.E.2d 433 (1988). Both motions test the legal sufficiency of the evidence to take the case to the jury. *Taylor v. Walker*, 84 N.C. App. 507, 353 S.E.2d 239, *reversed on other grounds*, 320 N.C. 729, 360 S.E.2d 796 (1987). In ruling on either motion the court must consider the evidence in the light most favorable to the nonmovant and may grant the motion only if the evidence is insufficient, as a matter of law, to support a verdict for the nonmovant. *Williams, supra* at 48, 366 S.E.2d at 437. Conflicts and inconsistencies in the evidence

DAVIS AND DAVIS REALTY CO. v. RODGERS

[96 N.C. App. 306 (1989)]

are to be resolved in favor of the nonmovant. *Id.* at 48, 366 S.E.2d at 437.

In their answer defendants admit that Jerome T. Rodgers, in his capacity as president of J. T. Rodgers Corp., agreed to pay a real estate commission to W. Cleve Davis in connection with the acquisition of the Hall property. The factual dispute in this case concerns whether defendants were required to pay the commission when the Hall heirs signed the sales contract or whether defendants were obligated to pay plaintiff the commission only if the sale actually closed. In resolving this factual dispute in favor of plaintiff, the jury had more than a scintilla of evidence that plaintiff's entitlement to its commission was established when the Hall heirs signed the contract and was not contingent upon the sale being consummated. *See, e.g., Broyhill v. Coppage,* 79 N.C. App. 221, 339 S.E.2d 32 (1986) (If there is more than a scintilla of evidence supporting each element of nonmovant's case, the motion for directed verdict [or judgment notwithstanding the verdict] should be denied.) (Citations omitted).

According to Davis' testimony, in order for plaintiff company to be entitled to the $50,000 commission he had to "secure the acceptance of [Mr. Rodger's offer by] the Hall family members, and have them execute the contract." Davis further testified that the "proposal was that he [Rodgers] would have 30 days after he signed the contract to examine the property to be sure it was satisfactory . . . after the initial 30-day period of time he would . . . pay us [Davis and Davis Realty] our commission for the work that we had performed." Davis testified that during a telephone conversation with Rodgers 26 December 1986, Rodgers informed Davis that he was not going to "close the contract" on the Hall property because there was "no money in it for him." Since the time for terminating the sales contract was past, Davis advised Rodgers that the binder deposit he had paid must be released to the Hall heirs. Davis next testified that he wrote defendant Rodgers a letter requesting payment of his commission. He read the letter to the jury which in pertinent part read:

> [W]e are writing to you in reference to services rendered to you by our firm in connection with the contract covering the Hall property . . . . We would like to receive payment for services we have rendered in connection therewith.

In September, 1986, you advised that you were prepared to purchase the Hall property provided we secure a firm commitment from the Hall family on the terms and conditions which you specifically specified, and are a part of the contract which was executed by the Hall interest in connection therewith.

You further advised that you would pay this office the sum of $50,000 following the initial 30 day period which would give you time to determine the suitability of the site for your purpose. The subject contract was not cancelled within the initial 30 day period, and thus we feel that our firm has earned the fee which you agreed to pay in connection therewith.

By demand we are requesting that you forward your check in the amount of $50,000 for services rendered to you by this company in negotiating a contract in accordance with the specific terms and conditions which you set forth and accepted.

On cross-examination Davis was asked to read selected portions of an affidavit he had submitted earlier. It included the following statement:

Mr. Rodgers promised to pay my company a commission of $50,000, and was not contingent upon the contract actually being closed out and performed. He promised to pay the commission if we could get the Hall heirs to sign the contract for a price of $7,100 per acre and other terms.

On cross-examination of Davis, defendants attempted to show that because of the termination clause in the sales contract, the commission agreement between defendants and W. Cleve Davis was nullified or repudiated. In response to questions concerning when the commission was due plaintiff repeatedly answered that the commission was due when the contract of sale was signed by the Hall heirs, unless defendant corporation exercised its right under the sales contract to terminate the sale within 30 days. In an effort to clarify the relationship between the oral agreement concerning the commission and the buyer's termination clause in the written sales contract, the following exchange took place between W. Cleve Davis and his attorney:

Q. Mr. Davis, there have been a lot of questions about when you expected — or when your company expected to receive payment of some commission. In the real estate community, when is a commission normally considered earned?

DAVIS AND DAVIS REALTY CO. v. RODGERS

[96 N.C. App. 306 (1989)]

A. At the time you bring the buyer and seller together and they sign a contract.

. . .

Q. (By Mr. Sterrett) Now, sometimes is it possible that the commission is not earned unless certain things happen?

A. That's correct.

Q. Is there any particular custom or practice in the community as far as when the commission is paid as opposed to when it is earned?

A. No, it is by negotiation on each contract.

. . .

Q. There have been a lot of questions about whether there was some condition about your company's entitlement of payment relating to this 30 day period. With respect to the promise that was made to pay your company a commission of $50,000, would you state whether or not that promise was conditioned upon the closing actually occurring?

A. No, sir, it was not.

This evidence tends to support the jury's verdict which essentially found that the $50,000 commission was earned when the Hall heirs agreed to sell the property to defendant and that plaintiff was under no duty to see the sale through to completion. Any inconsistencies in the plaintiff's evidence with regard to when the commission was actually due and payable were for resolution by the jury. *Murray v. Murray*, 296 N.C. 405, 250 S.E.2d 276 (1979). Furthermore, plaintiff's evidence, albeit somewhat contradictory concerning whether the commission was payable immediately upon seller's signing of the contract or only payable within 30 days after execution if defendant-buyer did not terminate the sale, did not rise to the level of binding adverse testimony, as argued by defendants. *See, e.g., Woods v. Smith*, 297 N.C. 363, 255 S.E.2d 174 (1979) (equivocal, uncertain, or inconsistent statements distinguished from unequivocal repudiation of allegations sufficient to justify a directed verdict). While the 30-day termination clause in the sales contract may have extended the time for payment of plaintiff's commission by 30 days, it did not conclusively alter the commission agreement to the extent that plaintiff was re-

quired to see the sale through to completion. This issue was for the jury and their verdict in plaintiff's favor was supported by sufficient evidence.

No error.

Judges JOHNSON and ORR concur.